NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

## IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.M.

No. 1 CA-JV 22-0266
FILED 5-9-2023

---

Appeal from the Superior Court in Maricopa County
No. JD39713
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

---

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Bailey Leo
*Counsel for Appellee*

------------------------------

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

------------------------------

**K I L E Y**, Judge:

¶1        Julian M. ("Father") appeals the juvenile court's order terminating his parental rights to his five-year-old child, "A.M." For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In April 2020, the Department of Child Safety ("DCS") received reports that A.M.'s mother Adreem B. ("Mother") was abusing methamphetamine and fentanyl and that Mother's significant other had committed acts of domestic violence against Mother and her children. Father had not protected A.M. from Mother's drug use or the violence in her home, and his whereabouts were unknown. DCS was also unable to locate A.M. but nonetheless filed a dependency petition and obtained a court order to take custody of him when he was located. Father failed to appear at the dependency hearing, and the juvenile court adjudicated A.M. dependent.

¶3        In January 2021, DCS found A.M. at his paternal grandmother's home. Over the paternal grandmother's objection, and with the assistance of the police, DCS took custody of A.M. DCS considered placing A.M. with his paternal grandmother during the dependency proceedings but decided against it when she refused to agree to a home study because "she was residing with individuals outside the family that she didn't want involved." Instead, DCS placed A.M. with his maternal grandmother. Father appeared for the first time at a court hearing in January 2021. Although Father provided his phone number during that hearing, DCS was later unable to reach Father at that number. Nor did Father contact DCS after the hearing.

¶4        Over the next four months, Father spoke with A.M. by phone but spent no time with him in person.

¶5        Meanwhile, Father was charged with a variety of crimes. In February 2021, Father was arrested for shoplifting. Two months later, he

was jailed after being charged with multiple theft and burglary-related felonies that he allegedly committed on various dates from November 2020 to April 2021 during the pendency of the juvenile court proceedings. Father remained in jail for the duration of the dependency proceedings. In May 2021, Father was charged with additional theft-related felonies that, again, were allegedly committed on various dates during the pendency of the juvenile court proceedings.

¶6         While Father was incarcerated, the case manager sent him several letters with updates about the case. She also tried, without success, to call Father at the jail. Because jail officials do not allow DCS service providers inside the facilities to provide services to inmates, the case manager could not offer Father any services beyond visitation.

¶7         DCS sought clearances that would allow contracted providers to supervise in-person visits between Father and A.M. at the jail, but the providers did not gain clearance until approximately October 2021. In the interim, A.M.'s maternal grandmother provided Father weekly video and phone call visits with A.M. Father also had additional virtual visits through the paternal grandmother, who arranged phone calls between Father and A.M.

¶8         In February 2022, DCS moved to terminate Father's parental rights to A.M. on nine months' out-of-home placement grounds, A.R.S. § 8-533(B)(8)(a), later amending its motion to allege fifteen months' out-of-placement grounds, *see* A.R.S. § 8-533(B)(8)(c). After a trial conducted over two days in August 2022 and November 2022, the superior court terminated Father's rights on fifteen months' out-of-placement grounds, and he appealed. This Court has jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶9         A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Termination of a parental relationship may be warranted where the state proves one statutory ground under A.R.S. § 8-533 by "clear and convincing evidence." *Id.* at 249, ¶ 12. "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005) (citation omitted). The court must also find that termination is in the child's best interest by a preponderance of the evidence. *Id.* at 284, ¶ 22.

¶10         This court "will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm

a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). This Court does not reweigh the evidence and "look[s] only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶11**        Before seeking to terminate a parent's rights based on the child's continuing out-of-home placement, DCS is required to make "a diligent effort to provide appropriate reunification services" to the parent. A.R.S. § 8-533(B)(8). To do so, DCS must provide the parent "with the time and opportunity to participate in programs designed to help [him] become an effective parent." *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). It must undertake rehabilitative measures that have "a reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). DCS is not, however, required to ensure that the parent participates in services, *JS-501904*, 180 Ariz. at 353, nor to provide futile services, *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.

**¶12**        Father challenges the juvenile court's order terminating his parental rights, asserting that DCS failed to "be diligent in offering reunification services." The State's obligation to provide "appropriate reunification services," he maintains, does not exempt "jailed inmate parent[s]" such as himself.

**¶13**        The record supports the court's finding that DCS made diligent efforts to provide services to Father during his incarceration. Due to his incarceration, the case manager was unable to speak with him by phone, but she sent him several letters to keep him updated about the case. Further, Father was able to visit A.M. throughout the dependency proceedings. Although DCS's parenting time supervisors were unable to gain access to provide supervised visits for Father until October 2021, DCS arranged in the interim for the maternal grandmother, with whom A.M. had been placed, to provide weekly video and phone calls between Father and the child. Father also had additional video and phone call visits arranged by A.M.'s paternal grandmother. Indeed, a status report from June 2021 reflects that Father's counsel told DCS that Father and A.M. "were having constant communication." Because DCS is not required to duplicate services a parent receives from other sources, Father's regular contact with A.M., whether arranged by DCS or by relatives, refute any suggestion that Father was denied an opportunity to participate in visitation with A.M. during the dependency proceedings. *See Kyle R. v. Dep't of Child Safety*, 1 CA-JV 22-0048, 2022 WL 6612638, at *2, ¶ 15 (Ariz.

App. Oct. 11, 2022) (mem. decision) ("[DCS] is not required . . . to duplicate a service the parent receives elsewhere.").

**¶14** In his opening brief, Father does not specifically identify any service other than visitation that he contends DCS should have provided but did not. Accordingly, Father has waived any argument that DCS was insufficiently diligent in providing other services. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (explaining that failure to develop argument results in waiver).

**¶15** In any event, although DCS officials did not offer services to Father other than visitation while he was incarcerated, there is no reason to believe that Father would have engaged in additional services had they been available. DCS was unable to contact Father between the January 2021 hearing and his April 2021 arrest; DCS officials tried without success to reach him at the phone number he had provided, and he did not reach out to DCS. Moreover, Father's trial testimony makes clear that, even if DCS had been able to contact him during that period, he would not have been willing to participate in services. When asked if he could have engaged in services prior to his incarceration in April 2021, Father testified, "For what? I didn't do nothing," later reiterating, "Why would I engage into [sic] something that I didn't do?" In light of Father's expressed unwillingness to engage in services offered by DCS, DCS cannot be said to have failed in its duty to make such services available. *See Jessica P. v. Dep't of Child Safety*, 251 Ariz. 34, 39, ¶ 17 (App. 2021) ("[DCS] is obligated to undertake measures with a reasonable probability of success" but "need not undertake rehabilitative measures that are futile."). We find no error.

**¶16** Father next argues that the juvenile court erred in finding termination was in A.M.'s best interests. This Court reviews constitutional and statutory interpretation issues *de novo. Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018). In addition to finding at least one statutory ground for termination, the juvenile court must also determine, by a preponderance of the evidence, whether termination would be in the best interests of the child. *Kent K.*, 210 Ariz. at 284, ¶ 22. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (emphasis omitted). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶17 The court may find that a child would benefit from termination if there is an adoption plan or if the child is adoptable, *see id.* at 151, ¶ 14, or if the child "would benefit psychologically from the stability an adoption would provide," *see JS-501904*, 180 Ariz. at 352. Conversely, the court may find that a child would be harmed by the continuation of the parent-child relationship "where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being." *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

¶18 Here, the record reflects that A.M. was in a kinship placement with his maternal grandmother who sought to adopt him. A.M.'s needs were being met in his placement. Indeed, Father himself expressed no concerns at trial about A.M.'s well-being in his grandmother's care. On the contrary, he expressly testified, "I don't object to him being there" and "I'm fine where he's at," tacitly acknowledging that A.M. was being well cared for. This evidence supports the juvenile court's determination that "termination is in [A.M.'s] best interest" because A.M.'s maternal grandmother "is willing to adopt [A.M.] and provide [him] with a safe and stable home," thereby providing him "with needed stability and predictability."

¶19 Contending that A.R.S. § 1-601 requires the juvenile court to "consider guardianship as an option" when making a best interests determination, Father asks this Court to "remand[] to the juvenile court for the presentation of evidence about the guardianship option."[1] Because the juvenile court here expressly considered whether a guardianship, rather than termination, would better serve A.M.'s best interests, we need not determine whether A.R.S. § 1-601 requires juvenile courts to consider guardianship as an alternative in every termination case.

---

[1] A.R.S. § 1-601 provides that "[t]he liberty of parents to direct the upbringing, education, health care and mental health of their children is a fundamental right," and the State, its subdivisions, and government entities "shall not infringe on these rights without demonstrating that the compelling governmental interest as applied to the child involved is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means."

¶20 Here, the juvenile court considered, and rejected, guardianship as an alternative to termination, determining that "adoption is in the child's best interest." The court explained that

> [A.M.] is young and is in a home that will proceed to adoption. Father had minimal contact with [A.M.] prior to his incarceration. Father has never provided for [his] basic needs. Finally, no one has presented any evidence that there is an individual who is able and would qualify to serve as a permanent guardian.

Reasonable evidence supports these findings. As the record shows, Father was absent from A.M.'s life for prolonged periods even before his current incarceration, as illustrated by Father's admission at trial that the paternal grandmother "raise[d]" A.M. "for a whole year" after Father went to prison for a prior offense in August 2018. In all, Father admitted at trial that he had been incarcerated for about half of 5-year-old A.M.'s life. Moreover, the maternal grandmother told DCS that she wished to adopt A.M. rather than serve as his guardian.

¶21 In any event, Father did not request a case plan of guardianship or move for a permanent guardianship. *See* A.R.S. § 8-872(A) ("Any party to a dependency proceeding . . . may file a motion for permanent guardianship.") And he had a full and fair chance to litigate the issue at the termination hearing. *See Cruz v. Garcia*, 240 Ariz. 233, 236, ¶ 11 (App. 2016) ("Due process entitles a party to notice and an opportunity to be heard at a meaningful time and in a meaningful manner," including the "chance to offer evidence and confront adverse witnesses.") (citation omitted). Father is entitled to no relief on his claim that the juvenile court should have established a guardianship instead of terminating his parental rights.

## CONCLUSION

¶22 For the foregoing reasons, we affirm.

